Dion Quinn 10121 Evergreen Way #25 539
Everett WA. 98204 #314-753-0758
Djq36o@hotmail.com
Pro Se 7 2016_05/06/2023

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

Dion Quinn,

                    Plaintiff(s),

        v.

LLOYD J. AUSTIN, III SECRETARY, U.S.
DEPARTMENT OF DEFENSE,

                    Defendant(s).

CASE NO. __2:23-cv-00665-JLR__
[to be filled in by Clerk's Office]

COMPLAINT FOR EMPLOYMENT
DISCRIMINATION

Jury Trial: ☒ Yes  ☐ No

## I.                    THE PARTIES TO THIS COMPLAINT

A.    Plaintiff(s)

*Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.*

| Name | Dion Quinn |
|---|---|
| Street Address | 10121 Evergreen Way #25 539 |
| City and County | Everett |
| State and Zip Code | Washington 98204 |

COMPLAINT FOR EMPLOYMENT DISCRIMINATION - 1

Dion Quinn 10121 Evergreen Way #25 539
Everett WA. 98204 #314-753-0758
Djq36o@hotmail.com
Pro Se 7 2016_05/06/2023

Telephone Number    314-753-0758

B.    Defendant(s)

*Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.*

Defendant No. 1

| | |
|---|---|
| Name | LLOYD J. AUSTIN, III |
| Job or Title *(if known)* | SECRETARY, U.S. DEPARTMENT OF DEFENSE |
| Street Address | 1000 Defense Pentagon |
| City and County | Washington |
| State and Zip Code | DC 20301-1000 |
| Telephone Number | |

C.    Place of Employment

The address at which I sought employment or was employed by the defendant(s) is:

| | |
|---|---|
| Name | Boston, MA Military Entrance Processing Station |
| Street Address | 495 Summer Street, 5th Floor |
| City and County | Boston |
| State and Zip Code | MA. 02210 |
| Telephone Number | |

**II.**                    **BASIS FOR JURISDICTION**

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

COMPLAINT FOR EMPLOYMENT DISCRIMINATION - 2

Dion Quinn 10121 Evergreen Way #25 539
Everett WA. 98204 #314-753-0758
Djq36o@hotmail.com
Pro Se 7 2016_05/06/2023

☒ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☒ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☐ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.
*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐ Other federal law *(specify the federal law)*:

Conspiracy against rights 18 U.S. Code§ 241, Deprivation of rights under color of law 18 U.S. Code§ 242

☐ Relevant state law *(specify, if known)*:

☐ Relevant city or county law *(specify, if known)*:

### III.                     STATEMENT OF CLAIM

*Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.*

1. Defendant Lloyd J. Austin III placed Plaintiff Dion Quinn, the only non-white Testing Clerk in his unit located at 495 Summer Street Boston, MA. 02210, 4th and 5th floor, was in a working environment with Confederate flag intimidation outside his workstation when he started on or about May 30, 2016.

2. On or about June 09, 2016, Defendant incorrectly accused Plaintiff of being late

COMPLAINT FOR EMPLOYMENT DISCRIMINATION - 3

3. On or about June 13, 2016, Defendant constantly changed Plaintiff's work schedule but did

Dion Quinn 10121 Evergreen Way #25 539
Everett WA. 98204 #314-753-0758
Djq36o@hotmail.com
Pro Se 7 2016_05/06/2023

not change the white co-worker's work schedule; **Plaintiff was hired as a morning Testing Clerk but was instructed to work the evening shift.**

4. **On or about June 13, 2016, Plaintiff told Defendant that the Confederate flag intimidated him. Defendant confirms that Plaintiff told him his concerns about the Confederate flag but denied it was there**.

5. On or about July 15, 2016, Defendant arbitrarily questioned Plaintiff's rest breaks. During a meeting, Plaintiff was informed that he might not be able to have his regular federally mandated rest break due to job mission; Defendant also instructed Plaintiff not to take a rest break at the last hour of the day; Defendant used profanity towards Plaintiff when he requested proper utensil to complete the job; Defendant accused Plaintiff of stealing time because he went to break after a mandated meeting. **Defendant testified that Plaintiff warned him that his action was unconstitutional**.

6. **On or about July 15, 2016, Plaintiff reported to Defendant that the incorrect working conditionings and mistreatment needed to stop because it was unconstitutional**, and **he will report it to the EEOC. Plaintiff contacted a union representative about the abuse to no avail. Finally, the plaintiff got the USMEPCOM EEO counselor and reported the discrimination before Defendant's adverse actions.**

Please see Exhibit A_____

_____

_____

B.    The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

☐    Failure to hire me.

☒    Termination of my employment.

☒    Failure to promote me.

☐    Failure to accommodate my disability.

☒    Unequal terms and conditions of my employment.

☒    Retaliation.

☒    Other acts *(specify)*:    Spoilation Rule 37 Failure to Make Disclosures or to Cooperate in Discovery; Sanctions

COMPLAINT FOR EMPLOYMENT DISCRIMINATION - 4

Dion Quinn 10121 Evergreen Way #25 539
Everett WA. 98204 #314-753-0758
Djq36o@hotmail.com
Pro Se 7 2016_05/06/2023

B.    It is my best recollection that the alleged discriminatory acts occurred on date(s)

May 2016-July 2019

C.    I believe that defendant(s) *(check one)*:

☒    is/are still committing these acts against me.

☐    is/are not still committing these acts against me.

D.    Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

☒    race _____

☒    color _____

☒    gender/sex _____

☐    religion _____

☐    national origin _____

☒    age *(year of birth)*    1975    *(only when asserting a claim of age discrimination.)*

☐    disability or perceived disability *(specify disability)*

COMPLAINT FOR EMPLOYMENT DISCRIMINATION - 5

Dion Quinn 10121 Evergreen Way #25 539
Everett WA. 98204 #314-753-0758
Djq36o@hotmail.com
Pro Se 7 2016_05/06/2023

E.     The facts of my case are as follows.  Attach additional pages if needed.

1.        Dion Quinn, the only non-white Testing Clerk in his unit, was in a working environment with **Confederate flag intimidation** outside his workstation when he started on or about May 30, 2016.

2.    Defendant incorrectly accused Plaintiff of being late

3.    Defendant constantly changed Plaintiff's work schedule; **Plaintiff was hired as a morning Testing Clerk but was instructed to work the evening shift**

Please see Exhibit B

_(Note:  As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)_

COMPLAINT FOR EMPLOYMENT DISCRIMINATION - 6

Dion Quinn 10121 Evergreen Way #25 539
Everett WA. 98204 #314-753-0758
Djq36o@hotmail.com
Pro Se 7 2016_05/06/2023

## IV.          EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

A.     It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

Oct. 03, 2016 _____

_____

_____

B.     The Equal Employment Opportunity Commission *(check one)*:

☐     has not issued a Notice of Right to Sue letter.

☒     issued a Notice of Right to Sue letter, which I received on *(date)*

Feb. 07, 2023 _____

*(Note:  Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.     Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☒     60 days or more have elapsed.
☐     less than 60 days have elapsed.

## V.                              RELIEF

*State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.*

WHEREFORE, the Plaintiff prays for the following relief:

COMPLAINT FOR EMPLOYMENT DISCRIMINATION - 7

Dion Quinn 10121 Evergreen Way #25 539
Everett WA. 98204 #314-753-0758
Djq36o@hotmail.com
Pro Se 7 2016_05/06/2023

A. That the Plaintiff be awarded appropriate compensatory damages;

B. That the Plaintiff be awarded an amount deemed fair and just by a Jury to compensate the Plaintiff for damages sustained as presented by the evidence in this case;

C. That the Plaintiff be awarded such other further relief as the Court deems proper. Plaintiff Dion Quinn claims judgment against the Defendant in an amount of $75,000 in actual, compensatory, and exemplary damages, together with, attorneys' fees, court cost, and other cost as provided by law. _____

_____

_____

**VI.**                    **CERTIFICATION AND CLOSING**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:                    05/06/2023

COMPLAINT FOR EMPLOYMENT DISCRIMINATION - 8

Dion Quinn 10121 Evergreen Way #25 539
Everett WA. 98204 #314-753-0758
Djq36o@hotmail.com
Pro Se 7 2016_05/06/2023

Signature of Plaintiff    _Dion Quinn_____

Printed Name of Plaintiff    Dion Quinn_____

COMPLAINT FOR EMPLOYMENT DISCRIMINATION - 9

1

Dion Quinn
10121 Evergreen Way # 25 539
Everett WA. 98204
Tel. 314-753-0758
Djq360@hotmail.com
05/06/2023

# STATEMENT OF CLAIM

1.  Defendant Lloyd J. Austin III placed Plaintiff Dion Quinn, the only non-white Testing Clerk in his unit located at 495 Summer Street Boston, MA. 02210, 4th and 5th floor, was in a working environment with Confederate flag intimidation outside his workstation when he started on or about May 30, 2016.

2.  On or about June 09, 2016, Defendant incorrectly accused Plaintiff of being late

3.  On or about June 13, 2016, Defendant constantly changed Plaintiff's work schedule but did not change the white co-worker's work schedule; **Plaintiff was hired as a morning Testing Clerk but was instructed to work the evening shift.**

4.  **On or about June 13, 2016, Plaintiff told Defendant that the Confederate flag intimidated him. Defendant confirms that Plaintiff told him his concerns about the Confederate flag but denied it was there**.

5.  On or about July 15, 2016, Defendant arbitrarily questioned Plaintiff's rest breaks. During a meeting, Plaintiff was informed that he might not be able to have his regular federally mandated rest break due to job mission; Defendant also instructed Plaintiff not to take a rest break at the last hour of the day; Defendant used profanity towards Plaintiff when he requested proper utensil to complete the job; Defendant accused Plaintiff of stealing time because he went to break after a mandated meeting. **Defendant testified that Plaintiff warned him that his action was unconstitutional**.

6.  **On or about July 15, 2016, Plaintiff reported to Defendant that the incorrect working conditionings and mistreatment needed to stop because it was unconstitutional**, and **he will report it to the EEOC. Plaintiff contacted a union representative about the abuse to no avail. Finally, the plaintiff got the USMEPCOM EEO counselor and reported the discrimination before Defendant's adverse actions.**

.   On or about July 21, 2016, Defendant instructed Plaintiff to register applicants as his regular job detail; however, a white co-worker wanted to do his job, so Defendant permitted it.

.   On or about July 22, 2016, in an unpleasant manner, Defendant instructed Plaintiff to a room to complete a job task. Later, during a team meeting, Defendant prohibited Plaintiff from using his cell phone in the testing room; however, the white co-worker was allowed to have her cell phone in the room.

9.  On or about August 10, 2016, Defendant accused Plaintiff of a mission failure and threatened him with written counseling. Defendant informed Plaintiff that training was **30 days, not 90 days; from my understanding, USMEPCOM regulation training is 90 days.**

Exhibit A

2

Dion Quinn
10121 Evergreen Way # 25 539
Everett WA. 98204
Tel. 314-753-0758
Djq360@hotmail.com
05/06/2023

10.  On or about August 12, 2016, Defendant made unwelcoming comments to Plaintiff's family member.

11. On or about August 22, 2016, Defendant created an environment where Plaintiff's co-workers told him to leave their section and work in another department.

12. On or about August 23, 2016, Defendant accused Plaintiff of mission failure; and informed him that he would receive a **written reprimand.**

13. On September 12, 2016, Defendant allowed Plaintiff's co-worker to perform his duties because she did not want to perform her duties and wanted Plaintiff to complete them.

14. On or about August 26, 2016, Defendant indicated that Plaintiff misplaced a medical record only to locate it in its proper place.

15. On or about August 29, 2016, Plaintiff, in a rush, brought his cell phone into the testing room after his break; Defendant was notified; due to the vagueness of the cell phone policy, Plaintiff asserts that he didn't see an issue with the phone in the room because it was turned off and he couldn't get into the workroom because the door was not working correctly; he secured the phone in the desk in front of his co-worker.

16. On or about August 30, 2016, during a unit meeting, Defendant issued Plaintiff a cell phone document and informed Plaintiff that anyone caught in the testing room with a cell phone would get a letter of reprimand.

17. On August 31, 2016, Defendant issued Plaintiff two **written reprimands, one for violating the cell phone policy; that his white coworkers were allowed to break daily; another violation Plaintiff was charged with was a violation of a dress code policy that did not apply to him. Interestingly, Defendant abruptly ended the cellphone policy when Plaintiff transferred to a different Agency in 2020.**

18. On or about September 6, 2016, a co-worker hurried Plaintiff while performing his duties.

19. On September 12, 2016, Defendant allowed Plaintiff's co-worker to perform his duties because she did not want to perform her duties and wanted Plaintiff to complete them.

20. On or about September 13, 2016, Defendant accused Plaintiff of being unpleasant in a meeting and allowed his co-worker to accuse him of not doing his job, telling him, "You need to find new employment"; Defendant **allowed his co-workers to supervise him**.

21. On or about September 14, 2016, Plaintiff's co-worker forcefully removed his hand from the computer mouse and closed a website he was browsing.

Exhibit A

Dion Quinn
10121 Evergreen Way # 25 539
Everett WA. 98204
Tel. 314-753-0758
Djq360@hotmail.com
05/06/2023

22. On or about September 15, 2016, Defendant accused Plaintiff of mistreating a testing applicant.

23. On or about September 23, 2016, Plaintiff's coworkers were discussing a non-white male applicant's test score condescendingly. The supervisor/co-worker instructed Plaintiff to complete a two-worker job without help.

24. On or about September 29, 2016, Supervisor rudely instructed Plaintiff to do his job using profanity as if he wasn't doing it. Ironically, Defendant sent an email to Plaintiff accusing him of rudeness.

25. On or about September 30, 2016, Defendant allowed Plaintiff's co-**worker/supervisor** to shout **profanely** during a move from one floor to another with no apparent consequences.

26. **On or about Oct. 03, 2016, EEO formally filed Plaintiff EEO report.**

27. On or about October 04, 2016, Defendant questioned Plaintiff's sick leave, even though he did not have a pattern of sick leave abuse.

28. On or about October 5, 2016, Defendant questioned Plaintiff's rest break after instructed him to have his first break by 2:00 p.m. and his last rest break before 7:00 p.m.

29.  On or about October 7, 2016, Defendant didn't allow Plaintiff to participate in a unit meeting. Also, Plaintiff was reprimanded for failure to follow instructions that he misunderstood.

30. On or about Oct. 14, 2016, Plaintiff's co-worker/supervisor continued to harass him, accusing him of stealing time.

31. On or about October 17, 2016, the supervisor/co-worker again interrupted Plaintiff while performing his duties.

32. On or about October 18, 2016, a supervisor/co-worker accused Plaintiff of breaking a hole-puncher.

33. On or about October 19, 2016, a supervisor/co-worker rushed Plaintiff off of the computer while I was registering an applicant; she also scorned how he performed his duties in the presence of an applicant.

34.  On or about October 20, 2016, Defendant walked by Plaintiff and did not speak or allow him to meet with the union when he requested it through email.

35. On or about October 21, 2016, Defendant accused Plaintiff of poor performance because he failed to complete a new task that he was unfamiliar with; most importantly, Plaintiff's supervisor/co-workers created the new job and did not allow Plaintiff to participate. Defendant instructed Plaintiff to follow his supervisor/co-

Exhibit A

4

Dion Quinn
10121 Evergreen Way # 25 539
Everett WA. 98204
Tel. 314-753-0758
Djq360@hotmail.com
05/06/2023

workers who were undermining him. Later that day, changed Plaintiff's work hours causing him economic hardship. He could no longer work early on Fridays, although Fridays were usually downtime days with no testing. Defendant informed Plaintiff that he would not get overtime pay unless he worked 15 minutes over his prescribed work time; anything less, I would not get paid for it, which seems to conflict with the union master agreement with the union and the agency time increments. Plaintiff was instructed to bring his issues to his first-line supervisor before going to the union representative.

36. On or about October 24, 2016, Defendant responded to Plaintiff union request by instructing him to request official time in ATAAPS to meet with the union, which seemed to conflict with the union and Agency agreement; she later amended her instructions. **As a result, the defendant did not pay Plaintiff overtime.**

37. On or about October 25, 2016, during a team meeting, a supervisor/co-worker questioned Plaintiff's overtime request and did not pay me overtime for the time I worked.

38. On or about October 26, 2016, Defendant allowed white workers to work solely on a new job description that all workers were mandated to follow. Plaintiff asked if he could participate, and I was not allowed.  Plaintiff asked to speak with the union regarding the matter, and I was denied then. During the meeting, Defendant interrupted Plaintiff several times and accused but allowed his white co-workers to speak freely during the session. Defendant also instructed Plaintiff not to use specific diction to her, e.g., no doubt. **Defendant did not pay Plaintiff overtime.**

39.  On or about October 27, 2016, Plaintiff witnessed his white co-worker walking into the testing room with her cellular phone while the supervisor was present; nothing happened to her after I reported the violation. Later in a meeting, Plaintiff asked upper management if his Lead co-worker was his supervisor, and they said yes, although she continues to say she was not. Defendant accused Plaintiff of jumping the chain of command, although the Agency stressed their open-door policy.

40.  On or about October 28, 2016, Defendant told white co-workers about a specific work procedure in case she was not at work but did not tell Plaintiff.

41. On or about November 01, 2016, during a meeting, Defendant informed Plaintiff that his white co-worker, solely, would implement a better way to conduct night testing. Defendant weaponized Plaintiff's co-workers against him; while at the desk typing an email, a co-worker looked over his shoulders, invading his personal space, and began to read his email.

42. On or about November 03, 2016, Defendant instructed Plaintiff to complete the next day's work, or he would be cited for insubordination. However, he informed Plaintiff during training that doing the next day's work was optional. On the other hand, Plaintiff's white co-**worker/supervisor** shouted **explicit** language during our move, that she would not complete a specific task because it wasn't a part of her job description, and she walked off.

Exhibit A

5

Dion Quinn
10121 Evergreen Way # 25 539
Everett WA. 98204
Tel. 314-753-0758
Djq360@hotmail.com
05/06/2023

43. On or about November 10, 2016, during a meeting, Defendant instructed Plaintiff not to turn off the air conditioner; however, the white co-workers were allowed to operate the portable ac unit with no restrictions. The air conditioner was accumulating black mold, which seemed dangerous to the applicants and the workers. During the meeting team meeting again, Defendant accused Plaintiff of talking aggressively every time he made a comment or asked a question. Moreover, Defendant had a meeting with the white workers that Plaintiff could not attend.

44. Defendant failed to send help to Plaintiff, although his job requires two people.

45. On or about November 17, 2016, Defendant accused Plaintiff of not completing his duties, even though the task in question was optional. Plaintiff escalated the air-conditioner issue to no avail.

46. On or about November 18, 2016, during a unit meeting, Defendant again accused Plaintiff of performing his duties incorrectly; she then stated that she was "done" and walked out.

47. On or about November 21, 2016, Defendant did not allow Plaintiff's co-workers to help him with a heavy workload, although their job was to assist him.

48. On or about November 22, 2016, again, Defendant did not assist Plaintiff with his duties while his co-workers were present and should have helped.

49. On or about November 23, 2316, Defendant made Plaintiff's co-worker his supervisor, even though they knew there was friction between them. However, according to USMEPCOM regulations, the co-worker's position as **Test Score Technician** does not have a supervisory role.

50. On or about November 25, 2016, Defendant instructed Plaintiff to complete his co-workers' duties while they were present and could have completed their work.

51. **On or about November 28, 2016,** Defendant demanded that Plaintiff looked at her when she spoke to him; later in the day, Defendant allowed a **military soldier to instruct him into a safe/locked room under threatening measures and intimidated him**.

52. On or about November 29, 2016, Defendant accused Plaintiff of failure to follow instructions for not emailing his co-worker. The Plaintiff asserts that his email was not working correctly and was at the end of his shift. At times, Plaintiff's email did not work, and he would not receive an email for days.

53. On or about December 09, 2016, Defendant called Plaintiff a liar numerous times while I was speaking to a co-worker about working morning testing. She stated that Plaintiff would never conduct testing at the high school. Unfortunately, Plaintiff was never allowed to test at the high school.

Exhibit A

Dion Quinn
10121 Evergreen Way # 25 539
Everett WA. 98204
Tel. 314-753-0758
Djq360@hotmail.com
05/06/2023

54. On or about December 13, 2016, Ironically, Defendant stated that Plaintiff was a good worker, that he was doing his job well and was a good person, that he did not have any problems with me, and that he liked working with me.

55. On or about December 14, 2016, Plaintiff received a **one-day proposed suspension for Discourtesy and Failure to follow instructions**. **Plaintiff asked to have the union present during the meeting, and he was informed that the union was unnecessary**. Later that evening, after testing, Defendant told Plaintiff that he saw his co-workers mistreating him and apologized for not stepping in sooner. He also stated that this was not the first time they harassed an employee. He told Plaintiff they harassed the previous employee before he received the job. He also told Plaintiff that his co-workers and upper management wanted him to write Plaintiff up for more things, but he said he would not. He stated that the Plaintiff is a good worker and works excellently. He also informed Plaintiff that he was never trained as a supervisor.

56. On or about January 9, 2017, Defendant instructed Plaintiff to conduct night testing alone, making it difficult to take his rest break.

57. On or about January 10, 2017, Defendant allowed a young white male, whom Plaintiff trained to act as his supervisor, but did not allow Plaintiff the same opportunity.

58. On or about January 13, 2017, Defendant did not properly train Plaintiff on a specific Aptitude test but prepared his white co-workers for the same test.

59. On or about January 18, 2017, Defendant continued to deny Plaintiff the support he needed to perform his job duties during Night Testing but properly equipped his white co-workers.

60. On or about February 3, 2017, Defendant failed to address the PII left on the front desk but reprimanded Plaintiff for records left in a secured room.

61. On or about February 10, 2017, Defendant issued Plaintiff a **one-day suspension**.

62. On or about February 22, 2017, Defendant did not provide Plaintiff with assistance for conducting night testing

63. On or about March 03, 2017, Defendant allowed the military to violate the Agency dress code by wearing **hats** on the floor but **reprimanded** Plaintiff for wearing his hat, and the dress code did not apply to him then.

64. Defendant gave Plaintiff a **good rating (2), only to lower it shortly afterward to a 3**, but gave his white co-workers good ratings **(2)**

65.  On or about March 09, Defendant constantly gave Plaintiff a disproportionate workload.

66. On or about March 13, 2017, Defendant told Plaintiff that he would be training the new

7

Dion Quinn
10121 Evergreen Way # 25 539
Everett WA. 98204
Tel. 314-753-0758
Djq360@hotmail.com
05/06/2023

Testing Clerk but allowed his white co-worker to teach him.

67. On or about March 16, 2017, Defendant failed to allow Plaintiff to attend the Battalion Commander meeting.

68. On or about March 20, 2017, Plaintiff's white co-workers insinuated that Defendant improperly graded workers' performance appraisals.

69. On or about Mar. 23, 2017, Defendant failed to address contractors violating the dress code policy that they should have adhered to; on the other hand, Defendant reprimanded Plaintiff for not following the dress code policy that did not apply to him.

70. On or about March 24, 2017, Defendant gave Plaintiff an option to have either a bus pass or a parking pass, but the parking pass did not do the same measure to his co-workers until after Plaintiff reported the double standard.

71. On or about March 29, 2017, Defendant allowed Plaintiff's white- coworker to work the day shift because of childcare but did not allow Plaintiff the same opportunity, even though he repeatedly requested to work the day shift because of childcare duties.

72. In March 2017, Defendant's action mentioned above resulted in the Plaintiff having an unequal workload compared to the morning white co-workers; however, Defendant understood that the workload was unequal but made Plaintiff work it up until right before they terminated his federal employment in October 2018.

73. On or about April 19, 2017, Defendant accused Plaintiff of mishandling documents that he later discovered.

74. On or about June 06, 2017, Defendant did not allow Plaintiff to drive to an event, although he volunteered and is a professional driver; he allowed Plaintiff's co-worker, who stated that he does not like chauffeuring. **Additionally, the defendant committed an act of spoilation by removing the Confederate flag.**

75. On or about June 26, 2017, Defendant allowed Plaintiff's white co-worker to leave private information in public without reprimanding them; on the other hand, suspended Plaintiff for lesser action.

76. On or about June 26, 2017, Defendant created an environment where the white co-workers were weaponized against Plaintiff, questioning his presence at the front desk but did not question the white workers present at the front desk.

77. On or about June 29, 2017, Defendant made Plaintiff work **overtime without comparable pay** while he allowed his white military workers to go home.

78. On or about June 29, 2017, Defendant denied Plaintiff the Lead position.

79. On or about June 2017, **Defendant allowed management implicated in Plaintiff's**

8

Dion Quinn
10121 Evergreen Way # 25 539
Everett WA. 98204
Tel. 314-753-0758
Djq360@hotmail.com
05/06/2023

**EEO report to interview him for the Lead position**.

80. On or about June 2017, Defendant posted the Lead position as a night position but allowed the selected person to work the day shift.

81. On or about July 03, 2017, Defendant allowed private information in public; interestingly, a privacy data cover sheet on the documents protected them, now, according to Defendant; on the other hand, Defendant **suspended** Plaintiff for leaving confidential information in a secured room.

82. On or about July 06, 2017, Defendant selected a less qualified white applicant for the job announcement even though Plaintiff was more suitable.

83. On or about July 06, 2017, Defendant allowed the white co-workers to work the day shift even though they posted the position as night employment; on the other hand, Defendant did not approve Plaintiff's day-shift work request.

84. On or about July 2017, Defendant prevented Plaintiff from conducting the ASVAB test at the high schools; on the other hand, he allowed Plaintiff's white co-workers to test at the high schools.

85. On or about August 01, 2017, Defendant instructed Plaintiff to adhere to a dress code that only applied to military and contractors.

86. On or about August 02, 2017, Defendant did not allow Plaintiff to work the morning but let the new white worker work the morning shift.

87. On or about August 07, 2017, Defendant did not recognize Plaintiff for training two new employees but gave credit to his white co-worker.

88. On or about August 07, 2017, Defendant canceled the Black Freedom Trail event after Plaintiff showed the supervisor his interest.

89. On or about Aug. 08, 2017, Defendant did not **pay** Plaintiff **over time** and instructed him to use comp time; on the other hand, Defendant paid his white co-workers **over time.**

90. On or about Aug. 08, 2017, Defendant told white co-workers they were doing a good job but did not say the same to Plaintiff, although they worked together.

91. On or about Aug. 09, 2017, Defendant falsely accused Plaintiff of mission failure but did not say anything to his white co-workers, at the time, who worked together on the matter.

92. On or about Aug. 21, 2017, Defendant questioned Plaintiff about reading his email but never said anything to his white co-workers for reading their emails.

93. On or about Aug. 23, 2017, Defendant did not give Plaintiff a time off award.

9

Dion Quinn
10121 Evergreen Way # 25 539
Everett WA. 98204
Tel. 314-753-0758
Djq360@hotmail.com
05/06/2023

94. On or about Aug. 23, 2017, Defendant allowed white co-workers with less seniority than Plaintiff to constantly change working conditions without Plaintiff's knowledge.

95. On or about Sep 18, 2017, Defendant slowly removed Plaintiff from his duties.

96. On or about Sep 21, 2017, Defendant falsely accused Plaintiff of taking a testing applicant's private information but did not accuse my white co-worker, and we worked together.

97. On or about Sep 28, 2017, Defendant did not allow Plaintiff to participate in the team meeting.

98. Between 2016-2020, Defendant instructed Plaintiff to amend his time on several occasions and botched Plaintiff's time incrementally; as a result, Defendant was attempting to **unjustly bill me for the time that they mismanaged over $8000**; this bill came to me months after I departed from the Agency.

99. On or about Oct. 03, 2016, the EEO counselor formally filed the Plaintiff's complaint and apologized for his timeliness.

100. On or about October 12, 2017, Defendant instructed Plaintiff to process medical records that could not be adequately tracked and were not secured and continued to accuse Plaintiff of the missing folders.

101. On or about October 13, 2017, Defendant instructed Plaintiff to email him after reading an assignment but did not do the same to my white co-worker.

102. On or about October 13, 2017, Defendant threatened the plaintiff, pointing his finger in his face and instructing him to come to his office for a meeting and advising him not to go into the Testing room unless he was testing; on the other hand, Defendant allowed the Plaintiff white coworkers to enter the room with no restrictions

103. On or about October 13, 2017, Plaintiff asked for union present during the meeting with management to no avail; Defendant had military **personnel in uniform** who **did not allow Plaintiff to leave the room and continued to threaten him; Defendant threatened to send Plaintiff home if he did not remove his headphones from his neck;** Defendant **instructed the Plaintiff not to discuss topics that were on the news; however, he did not tell the plaintiff white co-workers the same; Defendant also reference that he would not give the Plaintiff an excellent reference to prospect new employment.**

104. On or about October 18, 2017, **Defendant** continued to place Plaintiff in a job detail, later to be accused of mishandling private information.

105. On October 24, 2017, Defendant allowed military personnel to disparage

10

Dion Quinn
10121 Evergreen Way # 25 539
Everett WA. 98204
Tel. 314-753-0758
Djq360@hotmail.com
05/06/2023

Plaintiff's dental work in front of clients.

106.    On or about October 27, 2017, Defendant instructed Plaintiff to complete his white co-worker's job duties when they could complete their work; this action hindered Plaintiff from completing his work timely.

107.    On or about October 2017, Defendant accused Plaintiff of time deception but did not do the same to his white co-workers.

108.    On or about October 2017, Defendant congratulated Plaintiff's white co-workers on a job procedure but failed to recognize Plaintiff; Defendant only recognized Plaintiff merely when Plaintiff's white coworker told Defendant that Plaintiff helped with the job duty.

109.    Defendant prevented Plaintiff from union representation and ultimately dismantled the union on or about October 31, 2017, during Plaintiff's EEO activity; as a result, Plaintiff had no protection from management during meetings; they instructed him into management quarters without a neutral party, and once in there, Defendant falsely accused Plaintiff of discourteous conduct on several occasions.

110.    On or about October 2017,  Defendant refused to acknowledge that Plaintiff trained the new Testing Clerks and told Plaintiff that his work was "marginal"; on the other hand, Defendant gave the white workers that Plaintiff trained awards for training workers**; Defendant told Plaintiff that he could not test in the Highschool because of his appearance;** in contrast, the Defendant allowed Plaintiff's white co-workers to test in High schools; Defendant **lied** about the **Confederate flag** and called the Plaintiff a liar and said he was a problem in the Agency; Defendant stated that they **destroyed video evidence** of the **Confederate flag**; however, several workers and patrons confirmed that the **Confederate flag** was present directly outside of the Plaintiff's workplace.

111.    On or about November 06, 2017, Defendant continued to prevent Plaintiff from testing at the high school but allowed his white co-workers to test at the high school,

112.    During a meeting on or about November 06, 2017, Defendant falsely accused Plaintiff of having an attitude during a team meeting; however, he did not say anything to his white co-workers, who were discourteous towards Plaintiff.

113.    On or about November 06, 2017, Defendant reiterated that only certain white Testing Clerks were allowed to Test at the High schools, preventing Plaintiff from performing an essential function of his job duties.

114.    On or about November 06, 2017, Defendant questioned Plaintiff's grammar, e.g., he misused base.

115.    On or about November 06, 2017, Defendant met with the white Testing Clerks and did not allow Plaintiff to attend the meeting regarding working overtime on Saturdays.

Exhibit A

11

Dion Quinn
10121 Evergreen Way # 25 539
Everett WA. 98204
Tel. 314-753-0758
Djq360@hotmail.com
05/06/2023

116.    Defendant met with only white employees on or about November 07, 2017.

117.    On or about Nov. 15, 2017, Defendant **reprimanded** Plaintiff for not standing when military personnel entered the room.

118.    **During a meeting on or about November 15, 2017, Plaintiff informed new management that he had an EEO complaint**.

119.    On or about November 15, 2017, Defendant informed Plaintiff that he would not give him a good reference if he sought new employment; however, he gave the Plaintiff white co-worker a good reference regarding his new employment

120.    On or about November 17, 2017, Defendant made Plaintiff work **overtime without pay** and took away an hour of administration time from Plaintiff.

121.    On or about December 06, 2017, Defendant created a working environment where Plaintiff did not have help and could not use the restroom; on several occasions, Defendant allowed management to only speak to Plaintiff's white co-workers when they came into his workplace.

122.    On or about December 08, 2017, Defendant played a movie that showed non-whites in a negative way called Mr. Smith Goes to Washington; after the movie, Defendant singled Plaintiff out and asked him if he wanted the film.

123.    On or about December 12, 2017, Defendant issued Plaintiff a **proposed 14-day suspension** for failure to follow instructions, etc.

124.    On or about Dec. 14, 2017, Defendant **allowed management in uniform to stand over Plaintiff threateningly and order him to stand down while sitting at his desk; Plaintiff became sick to his stomach from management action.**

125.    On or about Dec. 14, 2017, **Defendant did not allow Plaintiff to use downtime during a meeting with EEO; on the other hand, Defendant did not make Plaintiff's white co-workers use annual leave when they conducted personal matters.**

126.    On or about Dec. 14, 2017, **Defendant denied Plaintiff's extension request to reply to the proposed suspension.**

127.    **On or about December 21, 2017, Defendant weaponized Plaintiff's co-workers against him; they discussed how they would perform his job duties while on suspension, even though his suspension was not final.**

128.    **On or about December 2017, Defendant weaponized the building security against Plaintiff; they randomly stopped and searched Plaintiff before entering the building. They detained him in the parking lot for having on a surgical mask.**

12

Dion Quinn
10121 Evergreen Way # 25 539
Everett WA. 98204
Tel. 314-753-0758
Djq360@hotmail.com
05/06/2023

129.    On or about Jan. 09, 2018, again, Defendant came into Plaintiff's workplace speaking about replacing his job duties.

130.    On or about Jan. 2018, Defendant issued Plaintiff a **14-day suspension**.

131.    On or about Feb. 07, 2018, Defendant allowed Plaintiff's white co-worker to start her duty at 0900 but denied him the same opportunity.

132.    On or about Feb. 13, 2018, Defendant documented Plaintiff's **14-day suspension in his performance evaluation for weeks.**

133.    On or about Feb. 13, 2018, **Defendant informed Plaintiff that he was the only non-military worker in BOSTONMEPS.**

134.    On or about Feb. 14, 2018, **Defendant hired a new worker while Plaintiff was on suspension and attempted to weaponize her against him by speaking of their private meeting.**

135.    On or about Feb. 14, 2018, **Defendant also allowed the new worker to leave work early, coupling her 59 minutes of administrative leave with her lunch; however, they suspended Plaintiff for similar actions.**

136.    Defendants advertised the 14-day suspension in Plaintiff's performance evaluation until March 16, 2018.

137.    On or about February 21, 2018**,** Defendant allowed management to search Plaintiff's work area without his presence looking for cables that Plaintiff reported to them that he did not know of at that time.

138.    On or about February 27, 2018, Defendant questioned Plaintiff's sick leave but did not do the same to his white co-workers.

139.    On or about March 16, 2018, Defendant removed the suspension from Plaintiff's performance appraisal but gave him a lower-than-average performance evaluation.

140.    On or about March 16, 2018, Defendant did not tell Plaintiff about his 59 minutes of admin leave.

141.    On or about March 19, 2018, Defendant questioned Plaintiff's routine sick leave procedures, but he did not do the same to his white co-workers.

142.    On or about March 21, 2018, Defendant referenced that he suspended Plaintiff because of his **given a 3-day suspension**.

143.    On or about April 04, 2018, Defendant accused Plaintiff of discourteousness because he did not stand when the Commander entered the room; however, the

Exhibit A

13

Dion Quinn
10121 Evergreen Way # 25 539
Everett WA. 98204
Tel. 314-753-0758
Djq360@hotmail.com
05/06/2023

Commander instructed us not to stand.

144.    On or about April 09, 2018, Defendant denied Plaintiff **within-grade step increase**.

145.    On or about April 10, 2018, Defendant, in full uniform, ordered Plaintiff in an intimidating manner into **Command headquarters without a third-party present and began to assault him with accusations verbally**. Additionally, they accused me of jumping the chain of command.

146.    Defendant failed to meet with Plaintiff on or about April 11, 2018, regarding his performance evaluation.

147.    **On or about April 12, 2018, Defendant instructed Plaintiff into Commander headquarters with uniform military personnel and began to interrogate Plaintiff, accusing him of a criminal act; Defendant accused Plaintiff of secretly recording a meeting because he had his cell phone present; on the other hand, the Plaintiff white co-workers were not accused of recording a meeting, when they have their cell phones during team meetings**.

148.    Defendant called building security on Plaintiff about the alleged illegal video recording.

149.    On or about April 13, 2018, for no apparent reason, Defendant restricted Plaintiff from using an exit door that he had used for years when he attempted to leave the building; however, they did not do the same to Plaintiff's white co-workers; later that day Defendant allowed two uniform military members to instructed the Plaintiff into an office and attempted to coerce him to sign a letter that appeared to be defamatory, prejudicial, and libelous, and to target the Plaintiff and paint him in a negative light.

150.    On or about April 13, 2018, Defendant questioned Plaintiff's sick leave and instructed him to provide a doctor's note, even though he did not have a pattern of sick leave abuse; on the other hand, plaintiff, with coworkers, was not treated the same.

151.    On or about April 13, 2018, Defendant accused Plaintiff of **sexual harassment.**

152.    On or about April 26, 2018, Defendant mentioned Plaintiff's low-performance appraisal to his co-workers; however, he did not do the same to his white coworkers; later that day, Defendant attempted to **weaponize** the **new** worker against Plaintiff, e.g., he challenged work with, etc.; the white employee told the Plaintiff that the Defendant instructed her into his office and asked her to write down things that "****" say and give it to them, personally, as they did with the Plaintiff other white co-workers. She informed Plaintiff to be careful because they were out to get him.

153.    On or about May 01, 2018, Defendant asked Plaintiff to provide a doctor's note

Exhibit A

14

Dion Quinn
10121 Evergreen Way # 25 539
Everett WA. 98204
Tel. 314-753-0758
Djq360@hotmail.com
05/06/2023

for sick leave; however, she did not ask Plaintiff's white co-workers to do the same.

154.   On or about May 07, 2018, Defendant instructed Plaintiff's co-worker to call him and question his approved sick leave.

155.   On or about May 11, 2018, Defendant removed Plaintiff from a job duty and gave it to the **younger white male worker solely**.

156.   On or about May 17, 2018, during the EO meeting, **Plaintiff noticed his white coworker with their cell phone on the desk in the Testing room with Defendant present; on the other hand, Defendant suspended Plaintiff for having his cell phone in the same Testing room**.

157.   On or about May 31, 2018, a white co-worker informed Defendant that he would never go over his superior head; consequently, the worker became Plaintiff's supervisor and began to discriminate against him, pointing his finger in his face, accusing him of being discourteous, and denied him an employment opportunity.

158.   On or about June 11, 2018, Defendant continued to allow Plaintiff's white co-workers to work the day shift but did not allow Plaintiff to work the day shift the same.

159.   On or about June 13, 2018, Defendant arbitrarily made remarks about Plaintiff's place of birth as an undesirable city to live in and suggested that he watch a Netflix show about How to Survive Prison.

160.   On or about June 13, 2018, Defendant allowed Plaintiff's white testing Clerks to have their Bluetooth in the Testing room but did not allow Plaintiff to have his headphones in the Testing room.

161.   On or about June 13, 2018, Plaintiff's new co-worker informed him that a co-worker in my EEO report texted her on her off day, talking discourteous about the plaintiff.

162.   On or about June 15, 2018, Defendant had a sidebar meeting with Plaintiff's white co-workers.

163.   On or about June 19, 2018, Defendant randomly instructed Plaintiff to email him at the end of his shift.

164.   On or about June 21, 2018, Defendant told Plaintiff that he could not Test at the high school because they would lose money, but he allowed Plaintiff's new white co-worker to test at the high school.

165.   On or about August 20, 2018, Defendant issued Plaintiff a **14-day proposal for removal** from his federal position.

15

Dion Quinn
10121 Evergreen Way # 25 539
Everett WA. 98204
Tel. 314-753-0758
Djq360@hotmail.com
05/06/2023

166.    On or about August 20, 2018, Defendant instructed Plaintiff into her office without a neutral party present after she accused him of **sexual harassment.**

167.    On or about August 21, 2018, Defendant denied Plaintiff sick leave because of the 14-day proposed removal.

168.    On or about August 22, 2018, Defendant deactivated Plaintiff's access to the building during the 14-day proposed removal.

169.    On or about August 25, 2018, Defendant instructed Plaintiff to change his sick leave from April 13, 2018.

170.    On or about August 27, 2018, Defendant denied Plaintiff sick leave, forcing him into AWOL status.

171.    On or about September 24, 2018, **Defendant weaponized the workers against Plaintiff; a medical worker approached Plaintiff and threatened manner and blamed him for the Agency removing the union**.

172.    On or about September 25, 2018, during a meeting about the medical worker threats the day before, **Defendant referenced to Plaintiff that people needed to watch what he said**.

173.    On October 12, 2018, Defendant **unjustly removed Plaintiff from his federal position**; Defendant's **action prevented Plaintiff from receiving a job from the USPS**.

174.    On or about July 16, 2019, during the MSPB hearing, **Defendant gave false testimony that she was unaware of Plaintiff's EEO activity before she removed him from his federal service; as a result,** Plaintiff received an unjust 21-day **suspension** and the reinstatement of his federal employment.

Exhibit A

Dion Quinn
10121 Evergreen Way # 25 539
Everett WA. 98204
Tel. 314-753-0758
Djq360@hotmail.com
05/06/2023

## FACTS

1. Dion Quinn, the only non-white Testing Clerk in his unit located at 495 Summer Street Boston, MA. 02210, 4th and 5th floor, was in a working environment with Confederate flag intimidation outside his workstation when he started on or about May 30, 2016.

2. Defendant incorrectly accused Plaintiff of being late

3. Defendant constantly changed Plaintiff's work schedule; **Plaintiff was hired as a morning Testing Clerk but was instructed to work the evening shift**

4. Plaintiff told Defendant that the Confederate flag intimidated him. Defendant confirms that Plaintiff told him his concerns about the Confederate flag but denied it was there.

5. Defendant arbitrarily questioned Plaintiff's rest breaks. During a meeting, Plaintiff was informed that he might not be able to have his regular federally mandated rest break due to job mission; Defendant also instructed Plaintiff not to take a rest break at the last hour of the day; Defendant used profanity towards Plaintiff when he requested proper utensil to complete the job; Defendant accused Plaintiff of stealing time because he went to break after a mandated meeting. **Finally, Defendant testified that Plaintiff warned him that his action was unconstitutional**.

6. **Plaintiff reported to Defendant that the incorrect working conditionings and mistreatment needed to stop because it was unconstitutional**, and **he will report it to the EEOC. Plaintiff contacted a union representative about the abuse to no avail. Finally, the plaintiff got the USMEPCOM EEO counselor and reported the discrimination before Defendant's adverse actions.**

. Defendant instructed Plaintiff to register applicants as his regular job detail; however, a white co-worker wanted to do his job, so Defendant permitted it.

. Defendant instructed Plaintiff to a room to complete a job task. Later, during a team meeting, Defendant prohibited Plaintiff from using his cell phone in the testing room; however, the white co-worker was allowed to have her cell phone in the room.

9. Defendant accused Plaintiff of a mission failure and threatened him with written counseling. Defendant informed Plaintiff that training was **30 days, not 90 days; from my understanding, USMEPCOM regulation training is 90 days.**

10. Defendant made unwelcoming comments to Plaintiff's family member.

11. Defendant allowed an environment where Plaintiff's co-workers told him to leave their section and work in another department.

Exhibit B

2

Dion Quinn
10121 Evergreen Way # 25 539
Everett WA. 98204
Tel. 314-753-0758
Djq360@hotmail.com
05/06/2023

12. Defendant accused Plaintiff of mission failure; and informed him that he would receive a **written reprimand.**

13. Defendant allowed Plaintiff's co-worker to perform his duties.

14. Defendant indicated that Plaintiff misplaced a medical record only to locate it in its proper place.

15. Plaintiff, in a rush, brought his cell phone into the testing room after his break; Defendant was notified; due to the vagueness of the cell phone policy, Plaintiff asserts that he didn't see an issue with the phone in the room because it was turned off and he couldn't get into the workroom because the door was not working correctly; he secured the phone in the desk in front of his co-worker.

16. During a unit meeting, Defendant issued a cell phone document and informed Plaintiff that anyone caught in the testing room with a cell phone would get a letter of reprimand.

17. Defendant issued Plaintiff two **written reprimands, one for violating the cell phone policy; and for violating a dress code policy that did not apply to him. Interestingly, Defendant abruptly ended the cellphone policy when Plaintiff transferred to a different Agency in 2020.**

18. Plaintiff's co-worker hurried him while performing his duties.

19. Again, in September 2016, Defendant allowed Plaintiff's co-worker to perform his duties and instructed him to perform their duties.

20. Defendant accused Plaintiff of being unpleasant in a meeting; his co-worker accused him of not doing his job, telling him, "You need to find new employment"; Defendant **allowed his co-workers to supervise him and track him through emails**.

21. Plaintiff's co-worker forcefully removed his hand from the computer mouse and closed a website he was browsing.

22. Defendant accused Plaintiff of mistreating a testing applicant.

23. Plaintiff's so-called white coworkers were discussing a non-white male applicant's test score condescendingly. Supervisor instructed Plaintiff to complete a two-worker job without help.

24. Supervisor rudely instructed Plaintiff to do his job using profanity as if he wasn't doing it. Ironically, Defendant sent an email to Plaintiff accusing him of rudeness.

Exhibit B

3

Dion Quinn
10121 Evergreen Way # 25 539
Everett WA. 98204
Tel. 314-753-0758
Djq360@hotmail.com
05/06/2023

25. Plaintiff's co-**worker/supervisor** shouted **profanely** during a move from one floor to another with no apparent consequences.

26. **EEO formally filed Plaintiff's EEO report. In the email, the EEO counselor apologized for being untimely.**

27. Defendant questioned Plaintiff's sick leave, even though he did not have a pattern of sick leave abuse.

28. Defendant questioned Plaintiff's rest break after instructed him to have his first break by 2:00 p.m. and his last rest break before 7:00 p.m.

29. Defendant didn't allow Plaintiff to participate in a unit meeting. Also, Plaintiff was reprimanded for failure to follow instructions that he misunderstood.

30. Plaintiff reported to Defendant that his co-worker/supervisor continued to accuse him of stealing time.

31. Plaintiff reported to Defendant that his supervisor/co-worker again interrupted Plaintiff while performing his duties.

32. Supervisor/co-worker accused Plaintiff of breaking a hole-puncher.

33. Co-worker rushed Plaintiff off of the computer while I was registering an applicant; she also belittled how he performed his duties in the presence of an applicant.

34. Defendant walked by Plaintiff and did not speak or allow him to meet with the union when he requested it through email.

35. Defendant accused Plaintiff of poor performance because he failed to complete a new task that he was unfamiliar with; most importantly, Plaintiff's supervisor/co-workers created the new job and did not allow Plaintiff to participate. Defendant instructed Plaintiff to follow his supervisor/co-workers who were undermining him. Later that day, changed Plaintiff's work hours causing him economic hardship. He could no longer work early on Fridays, although Fridays were usually downtime days with no testing. Defendant informed Plaintiff that he would not get overtime pay unless he worked 15 minutes over his prescribed work time; anything less, I would not get paid for it, which seems to conflict with the union master agreement with the union and the agency time increments. Plaintiff was instructed to bring his issues to his first-line supervisor before going to the union representative.

36. Defendant responded to Plaintiff union request by instructing him to request official time in ATAAPS to meet with the union, which seemed to conflict with the union and Agency agreement; she later amended her instructions. **Defendant did not pay**

Exhibit B

4

Dion Quinn
10121 Evergreen Way # 25 539
Everett WA. 98204
Tel. 314-753-0758
Djq360@hotmail.com
05/06/2023

**Plaintiff overtime.**

37. During a team meeting, a supervisor/co-worker questioned Plaintiff's overtime request and did not pay me overtime for the time I worked.

38. Defendant allowed white workers to work solely on a new job description that all workers were mandated to follow. Plaintiff asked if he could participate, and I was not allowed.  Plaintiff asked to speak with the union regarding the matter, and I was denied then. During the meeting, Defendant interrupted Plaintiff several times and accused but allowed his white co-workers to speak freely during the session. Defendant also instructed Plaintiff not to use specific diction to her, e.g., no doubt. **Defendant did not pay Plaintiff overtime.**

39.  Plaintiff witnessed his white co-worker walking into the testing room with her cellular phone while the supervisor was present; nothing happened to her after I reported the violation. Later in a meeting, Plaintiff asked upper management if his Lead co-worker was his supervisor, and they said yes, although she continues to say she was not. Defendant accused Plaintiff of jumping the chain of command, although the Agency stressed their open-door policy.

40.  Defendant told white co-workers about a specific work procedure in case she was not at work but did not tell Plaintiff.

41. On or about November 01, 2016, during a meeting, Defendant informed Plaintiff that his white co-worker, solely, would implement a better way to conduct night testing; while at the desk typing an email, a co-worker looked over his shoulders, invading his personal space, and began to read his email.

42. Defendant instructed Plaintiff to complete the next day's work, or he would be cited for insubordination. However, he informed Plaintiff during training that doing the next day's work was optional. On the other hand, Plaintiff's white co-**worker/supervisor** shouted **explicit** language during their move, that she would not complete a specific task because it wasn't a part of her job description, and she walked off.

43. Defendant instructed Plaintiff not to turn off the air conditioner; however, the white co-workers were allowed to operate the portable ac unit with no restrictions. As a result, the air conditioner was accumulating black mold. During the team meeting again, Defendant accused Plaintiff of talking aggressively every time he made a comment or asked a question. Moreover, Defendant had a meeting with the white workers that Plaintiff could not attend.

44.  Defendant failed to send help to Plaintiff, although his job requires two people.

45.  Defendant accused Plaintiff of not completing his duties, even though the task was

5

Dion Quinn
10121 Evergreen Way # 25 539
Everett WA. 98204
Tel. 314-753-0758
Djq360@hotmail.com
05/06/2023

optional. Plaintiff escalated the air-conditioner issue to no avail.

46. Defendant again accused Plaintiff of performing his duties incorrectly; she then stated that she was "done" and walked out.

47.  Defendant did not allow Plaintiff's co-workers to help him with a heavy workload, although their job was to assist him.

48. Defendant did not assist Plaintiff with his duties while his co-workers were present and should have helped.

49. Defendant made Plaintiff's co-worker his supervisor, even though they knew there was friction between them. However, according to USMEPCOM regulations, the co-worker's position as **Test Score Technician** does not have a supervisory role.

50. Defendant instructed Plaintiff to complete his co-workers' duties while they were present and could have completed their work.

51. Defendant demanded that Plaintiff looks at her when she spoke to him; later in the day, Defendant allowed **a military soldier to instruct him into a safe/locked room under threatening measures and intimidated him**.

52. Defendant accused Plaintiff of failure to follow instructions for not emailing his co-worker. The Plaintiff asserts that his email was not working correctly and was at the end of his shift. At times, Plaintiff's email did not work, and he would not receive an email for days.

53. Defendant called Plaintiff a liar numerous times while I was speaking to a co-worker about working morning testing**. She stated that Plaintiff would never conduct testing at the high school. Unfortunately, Plaintiff was never allowed to test at the high school**.

54. Ironically, Defendant stated that Plaintiff was a good worker, that he was doing his job well and was a good person, that he did not have any problems with me, and that he liked working with me.

55. Plaintiff received a **one-day proposed suspension for Discourtesy and Failure to follow instructions**. **Plaintiff asked to have the union present during the meeting, and he was informed that the union was unnecessary**. Later that evening, after testing, Defendant told Plaintiff that he saw his co-workers mistreating him and apologized for not stepping in sooner. He also stated that this was not the first time they harassed an employee. He told Plaintiff they harassed the previous employee before he received the job. He also told Plaintiff that his co-workers and upper management wanted him to write Plaintiff up for more things, but he said he would not. He stated that the Plaintiff is a good worker and works

6

Dion Quinn
10121 Evergreen Way # 25 539
Everett WA. 98204
Tel. 314-753-0758
Djq360@hotmail.com
05/06/2023

excellently. He also informed Plaintiff that he was never trained as a supervisor.

56. Defendant instructed Plaintiff to conduct night testing alone, making it difficult to take his rest break.

57. Defendant allowed a young white male, whom Plaintiff trained to act as his supervisor, but did not allow Plaintiff the same opportunity.

58. Defendant did not properly train Plaintiff on a specific Aptitude test but prepared his white co-workers for the same test.

59. Defendant continued to deny Plaintiff the support he needed to perform his job duties during Night Testing but properly equipped his white co-workers.

60. Defendant failed to address the PII left on the front desk but reprimanded Plaintiff for records left in a secured room.

61. Defendant issued Plaintiff a **one-day suspension**.

62. Defendant did not provide Plaintiff with assistance for conducting night testing.

63. Defendant gave Plaintiff a **good rating (2), only to lower it shortly afterward to a 3**, but gave his white co-workers good ratings **(2)**

64.  Defendant constantly gave Plaintiff a disproportionate workload.

65.  Defendant told Plaintiff he would train the new Testing Clerk but allowed his white co-worker to teach him.

66.  Defendant failed to allow Plaintiff to attend the Battalion Commander meeting.

67. Plaintiff's white co-workers insinuated that Defendant improperly graded workers' performance appraisals

68. Defendant allowed the military to violate the Agency dress code by wearing **hats** on the floor but **reprimanded** Plaintiff for wearing his hat, and the dress code did not apply to him at the time.

69. Defendant allowed contractors to violate the dress code policy(wearing hats in the building) that they should have adhered to; on the other hand, Defendant reprimanded Plaintiff for not following the dress code policy that did not apply to him.

7

Dion Quinn
10121 Evergreen Way # 25 539
Everett WA. 98204
Tel. 314-753-0758
Djq360@hotmail.com
05/06/2023

70. Defendant gave Plaintiff an option to have either a bus pass or parking pass but did not do the same measure to his co-workers until after Plaintiff reported the double standard.

71.  Defendant allowed Plaintiff's white- coworker to work the day shift but did not allow Plaintiff the same opportunity, even though he repeatedly requested to work the day shift because of childcare duties.

72.  Defendant's action mentioned above resulted in the Plaintiff having an unequal workload compared to the morning white co-workers; however, Defendant understood that the workload was unequal but made Plaintiff work it up until right before they terminated his federal employment in October 2018.

73. Defendant accused Plaintiff of mishandling documents that he later discovered.

74. Defendant did not allow Plaintiff to drive to an event, although he volunteered and is a professional driver; he allowed Plaintiff's co-worker, who stated that he does not like chauffeuring. **Defendant committed an act of spoilation by removing the Confederate flag.**

75. Defendant allowed Plaintiff's white co-worker to leave private information in public; on the other hand, suspended Plaintiff for lesser action.

76. Plaintiff's white co-workers questioned him for sitting at the front desk but did not question his white workers at the front desk.

77. Defendant made Plaintiff work **overtime without comparable pay** while he allowed his white military workers to go home.

78. Defendant denied Plaintiff the Lead position.

79. Defendant allowed **management implicated** in Plaintiff's **EEO report to interview him for the Lead position**.

80. Defendant posted the Lead position as a night position but allowed the selected person to work the day shift.

81.  Defendant left private information in public; interestingly, a privacy data cover sheet on the documents protected them, now, according to Defendant; on the other hand, Defendant **suspended** Plaintiff for leaving confidential information in a secured room.

82. Defendant selected what appears to be a white applicant for the Lead job announcement even though the plaintiff was more suitable.

Exhibit B

8

Dion Quinn
10121 Evergreen Way # 25 539
Everett WA. 98204
Tel. 314-753-0758
Djq360@hotmail.com
05/06/2023

83. Defendant allowed the white co-workers to work the day shift even though they posted the position as night employment; on the other hand, Defendant did not approve Plaintiff's day-shift work request.

84. Defendant prevented Plaintiff from conducting the ASVAB test at the high schools; however, he allowed Plaintiff's white co-workers to test at the high schools.

85. Defendant instructed Plaintiff to adhere to a dress code that only applied to military and contractors.

86. Defendant did not allow Plaintiff to work the morning but let the new white worker work the morning shift.

87. Defendant did not recognize Plaintiff for training two new employees but gave credit to his white co-worker.

88. Defendant canceled the Black Freedom Trail event after Plaintiff showed the supervisor his interest.

89. Defendant did not **pay** Plaintiff **over time** and instructed him to use comp time; on the other hand, Defendant paid his white co-workers **over time.**

90. Defendant told white co-workers they were doing a good job but did not say the same to Plaintiff, although they worked together.

91. Defendant accused Plaintiff of mission failure but did not say anything to his white co-workers, at the time, who worked together on the matter.

92. Defendant questioned Plaintiff about reading his email.

93.  Defendant did not give Plaintiff time off the award.

94.  Defendant allowed a **younger white male** co-worker with less seniority than Plaintiff to change working conditions without Plaintiff's knowledge constantly.

95. Defendant slowly removed Plaintiff from his duties.

96.  On or about Sep 21, 2017, Defendant falsely accused Plaintiff of taking a testing applicant's private information but did not accuse my white co-worker, and we worked together.

97.  Defendant did not allow Plaintiff to participate in the team meeting.

98. Between 2016-2020, Defendant instructed Plaintiff to amend his time on several occasions and botched Plaintiff's time incrementally; as a result, Defendant was

9

Dion Quinn
10121 Evergreen Way # 25 539
Everett WA. 98204
Tel. 314-753-0758
Djq360@hotmail.com
05/06/2023

attempting to **unjustly bill me for the time that they mismanaged over $8000**; this bill came to me months after I departed from the Agency.

99. EEO counselor formally filed the Plaintiff's complaint and apologized for his timeliness.

100.    Defendant instructed Plaintiff to process medical records that could not be adequately tracked and were not secured and continued to accuse Plaintiff of the missing folders.

101.     Defendant instructed Plaintiff to email him after reading an assignment but did not do the same to my white co-worker.

102.    Defendant threatened the plaintiff**, pointing his finger in his face and instructing him to come to his office for a meeting and advising him not to go into the Testing room unless he was testing**; on the other hand, Defendant allowed the Plaintiff's white coworkers to enter the Testing room with no restrictions

103.    Plaintiff asked for union present during the meeting with management to no avail; Defendant had military **personnel in uniform** who **did not allow Plaintiff to leave the room and continued to threaten him; Defendant threatened to send Plaintiff home if he did not remove his headphones from his neck;** Defendant **instructed the Plaintiff not to discuss topics that were on the news; however, he did not tell the plaintiff white co-workers the same; Defendant also reference that he would not give the Plaintiff an excellent reference to prospect new employment.**

104.    Defendant continued to place Plaintiff in a job detail, later to be accused of mishandling private information.

105.    Defendant allowed military personnel to disparage Plaintiff's dental work in front of clients.

106.     Defendant instructed Plaintiff to complete his white co-worker's job duties when they could complete their work; this action hindered Plaintiff from completing his work timely.

107.     Defendant accused Plaintiff of time deception.

108.     Defendant congratulated Plaintiff's white co-workers on a job procedure but failed to recognize Plaintiff; Defendant only recognized Plaintiff merely when Plaintiff's white coworker told Defendant that Plaintiff helped with the job duty.

109.    Defendant prevented Plaintiff from union representation and ultimately dismantled the union on or about October 31, 2017, during Plaintiff's EEO activity;

10

Dion Quinn
10121 Evergreen Way # 25 539
Everett WA. 98204
Tel. 314-753-0758
Djq360@hotmail.com
05/06/2023

as a result, Plaintiff had no protection from management during meetings; they instructed him into management quarters without a neutral party, and once in there, Defendant falsely accused Plaintiff of discourteous conduct on several occasions.

110.    Defendant did not acknowledge that Plaintiff trained the new Testing Clerks and told Plaintiff that his work was "marginal"; on the other hand, Defendant gave the white workers that Plaintiff trained awards for training workers**; Defendant told Plaintiff that he could not test in the Highschool because of his appearance;** in contrast, the Defendant allowed Plaintiff's white co-workers to test in High schools; Defendant **lied** about the **Confederate flag** and called the Plaintiff a liar and said he was a problem in the Agency; Defendant stated that they **destroyed video evidence** of the **Confederate flag**; however, several workers and patrons confirmed that the **Confederate flag** was present directly outside of the Plaintiff's workplace.

111.    Defendant continued to prevent Plaintiff from testing at the high school but allowed his white co-workers to test at the high school,

112.    Defendant falsely accused Plaintiff of having an attitude during a team meeting; however, he did not say anything to his white co-workers, who were discourteous towards Plaintiff.

113.    Defendant reiterated that only certain white Testing Clerks were allowed to Test at the High schools, preventing Plaintiff from performing an essential function of his job duties.

114.    The defendant questioned Plaintiff's grammar, e.g., he misused base.

115.    Defendant met with the white Testing Clerks and did not allow Plaintiff to attend the meeting regarding working overtime on Saturdays.

116.    Again, Defendant met with only white employees.

117.    Defendant **reprimanded** Plaintiff for not standing when military personnel entered the room.

118.    **Plaintiff informed new management that he had an EEO complaint**.

119.    Defendant informed Plaintiff that he would not give him a good reference if he sought new employment; however, he gave the Plaintiff white co-worker a good reference regarding his new employment

120.    Defendant made Plaintiff work **overtime without pay** and took away an hour of administration time from Plaintiff.

121.    Defendant created a working environment where Plaintiff did not have help and

11

Dion Quinn
10121 Evergreen Way # 25 539
Everett WA. 98204
Tel. 314-753-0758
Djq360@hotmail.com
05/06/2023

could not use the restroom; on several occasions, Defendant allowed management to only speak to Plaintiff's white co-workers when they came into his workplace.

122.    Defendant played a movie that showed non-whites in a negative way called Mr. Smith Goes to Washington; after the movie, Defendant singled Plaintiff out and asked him if he wanted the film.

123.    Defendant issued Plaintiff a **proposed 14-day suspension** for failure to follow instructions, etc.

124.    Defendant **allowed management in uniform to stand over Plaintiff threateningly and ordered him to stand down while sitting at his desk; Plaintiff became sick to his stomach from management action.**

125.     **Defendant did not allow Plaintiff to use downtime during a meeting with EEO.**

126.    **Defendant denied Plaintiff's extension request to reply to the proposed suspension.**

127.    **Defendant discussed how they would perform the plaintiff's job duties while on suspension, even though his suspension was not final.**

128.     **Building security randomly stopped and searched Plaintiff before entering the building, and they detained him in the parking lot for wearing a surgical mask.**

129.    Defendant came into Plaintiff's workplace speaking about replacing his job duties.

130.    Defendant issued Plaintiff a **14-day suspension**.

131.     Defendant allowed Plaintiff's white co-worker to start her duty at 0900 but denied him the same opportunity.

132.     Defendant documented Plaintiff's **14-day suspension in his performance evaluation for weeks.**

133.    **Defendant informed Plaintiff that he was the only non-military worker in BOSTONMEPS.**

134.    **Defendant hired a new worker while Plaintiff was on suspension and attempted to weaponize her against him by speaking of their private meeting.**

135.     **Defendant also allowed the new worker to leave work early, coupling her 59**

12

Dion Quinn
10121 Evergreen Way # 25 539
Everett WA. 98204
Tel. 314-753-0758
Djq360@hotmail.com
05/06/2023

**minutes of administrative leave with her lunch; however, they suspended Plaintiff for similar actions.**

136.    Defendants advertised the 14-day suspension in Plaintiff's performance evaluation until March 16, 2018.

137.    Defendant permitted management to search Plaintiff's work area without his presence looking for cables that Plaintiff reported to them that he did not know of at that time.

138.    The defendant questioned Plaintiff's sick leave.

139.    Defendant reluctantly removed the suspension from Plaintiff's performance appraisal but gave him a lower-than-average performance evaluation.

140.    Defendant did not tell Plaintiff about his 59 minutes of admin leave.

141.    The defendant questioned Plaintiff's routine sick leave procedures.

142.    Defendant referenced that he suspended Plaintiff because of his **given a 3-day suspension**.

143.    Defendant accused Plaintiff of discourteousness because he did not stand when the Commander entered the room; however, the Commander instructed Plaintiff not to stand.

144.    Defendant **denied Plaintiff within-grade step increase**.

145.    **Defendant, in full uniform, ordered Plaintiff in an intimidating manner into Command headquarters without a third-party present and began to assault him with accusations verbally. Additionally, they accused me of jumping the chain of command**.

146.    Defendant failed to meet with Plaintiff on or about April 11, 2018, regarding his performance evaluation.

147.    Defendant instructed Plaintiff into Commander headquarters with uniform military personnel and began to interrogate Plaintiff, accusing him of a **criminal act; Defendant accused Plaintiff** of secretly recording a meeting because he had his cell phone present; on the other hand, the Plaintiff's white co-workers were not accused of recording a meeting, when they have their cell phones during team meetings.

148.    Defendant called building security on Plaintiff about the alleged illegal video recording.

Exhibit B

13

Dion Quinn
10121 Evergreen Way # 25 539
Everett WA. 98204
Tel. 314-753-0758
Djq360@hotmail.com
05/06/2023

149.    Defendant restricted Plaintiff from using an exit door that he had used for years when he attempted to leave the building; later that day, Defendant allowed two uniformed military members to instruct Plaintiff into an office and tried to coerce him to sign a letter that appeared to be defamatory, prejudicial, and libelous, and to target the Plaintiff and paint him in a negative light.

150.    The defendant questioned Plaintiff's sick leave and instructed him to provide a doctor's note, even though he did not have a pattern of sick leave abuse.

151.    Defendant accused Plaintiff of **sexual harassment.**

152.    Defendant mentioned Plaintiff's low-performance appraisal to his co-workers; however, he did not do the same to his white coworkers; later that day, Defendant attempted to **weaponize** the **new** worker against Plaintiff, e.g., he is challenging to work with, etc.; the white employee told the Plaintiff that the Defendant instructed her into his office and asked her to write down things that the Plaintiff say and give it to them, personally, as they did with the Plaintiff other white co-workers. She informed Plaintiff to be careful because they were out to get him.

153.    Defendant asked Plaintiff to provide a doctor's note for sick leave; however, she did not ask Plaintiff's white co-workers to do the same.

154.    Defendant instructed Plaintiff's co-worker to call him and question his approved sick leave.

155.    Defendant removed Plaintiff from a job duty and gave it to the **younger white male worker solely**.

156.    During the EO meeting, **Plaintiff noticed his white coworker with their cell phone on the desk in the Testing room with Defendant present; on the other hand, Defendant suspended Plaintiff for having his cell phone in the same Testing room**.

157.    **A white co-worker informed Defendant that he would never go over his superior head; consequently, the worker became Plaintiff's supervisor and began to discriminate against him, pointing his finger in his face, accusing him of being discourteous, and denying him employment opportunities**.

158.    Defendant continued to allow Plaintiff's white co-workers to work the day shift but did not allow Plaintiff to work the day shift the same.

159.    Defendant arbitrarily made remarks about Plaintiff's place of birth as an undesirable city to live in and suggested that he watch a Netflix show about How to Survive Prison.

14

Dion Quinn
10121 Evergreen Way # 25 539
Everett WA. 98204
Tel. 314-753-0758
Djq360@hotmail.com
05/06/2023

160. Defendant allowed Plaintiff's white testing Clerks to have their Bluetooth in the Testing room but did not allow Plaintiff to have his headphones in the Testing room.

161. Plaintiff's new co-worker informed him that a co-worker in my EEO report texted her on her off day, talking discourteous about the plaintiff.

162. The defendant had a sidebar meeting with Plaintiff's white co-workers.

163. Defendant randomly instructed Plaintiff to email him at the end of his shift.

164. Defendant told Plaintiff that he could not Test at the high school because they would lose money, but he allowed Plaintiff's new white co-worker to test at the high school.

165. Defendant issued Plaintiff a **14-day proposal for removal** from his federal position.

166. Defendant instructed Plaintiff into her office without a neutral party present after she accused him of **sexual harassment.**

167. Defendant denied Plaintiff sick leave because of the 14-day proposed removal.

168. Defendant deactivated Plaintiff's access to the building during the 14-day proposed removal.

169. Defendant instructed Plaintiff to change his sick leave from April 13, 2018.

170. Defendant denied Plaintiff sick leave, forcing him into AWOL status.

171. On or about September 24, 2018, **Defendant weaponized the workers against Plaintiff; a medical worker approached Plaintiff and threatened manner and blamed him for the Agency removing the union**.

172. During a meeting about the medical worker threats the day before, **Defendant told Plaintiff that people needed to watch what he said**.

173. Defendant **unjustly removed Plaintiff from his federal position**; Defendant's **action prevented Plaintiff from receiving a job from the USPS**.

174. **During the MSPB hearing, Defendant gave false testimony that she was unaware of Plaintiff's EEO activity before she removed him from his federal service; as a result, Plaintiff received an unjust 21-day suspension and the reinstatement of his federal employment.**

Exhibit B

Dion Quinn
10421  vergreen   ay   25 539
verett    A. 9  204
Tel. 314-  53-0  5
D   360   hotmail.com
05 06 2023



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Office of Federal Operations**
**P.O. Box 77960**
**Washington, DC 20013**

Dion Quinn, a/k/a
Alan F.,[1]
Complainant,

v.

Christine Wormuth,
Secretary,
Department of the Army,
Agency.

Request No. 2022004621

Appeal No. 2021001987

Hearing No. 520-2019-00129X

Agency No. ARMEPCOM16OCT04053

DECISION ON REQUEST FOR RECONSIDERATION

Complainant requested that the Equal Employment Opportunity Commission (EEOC or Commission) reconsider its decision in Alan F. v. Dept. of the Army, EEOC Appeal No. 2021001987 (July 28, 2022).  EEOC Regulations provide that the Commission may, in its discretion, grant a request to reconsider any previous Commission decision issued pursuant to 29 C.F.R. § 1614.405(a), where the requesting party demonstrates that: (1) the appellate decision involved a clearly erroneous interpretation of material fact or law; or (2) the appellate decision will have a substantial impact on the policies, practices, or operations of the agency.  See 29 C.F.R. § 1614.405(c).

Complainant, a Test Administrator at the Agency's Military Entrance Processing Station in Boston, Massachusetts, filed a formal EEO complaint alleging that the Agency discriminated against him on the bases of race (African American), sex (male), and in reprisal for prior protected EEO activity when:

---

[1] This case has been randomly assigned a pseudonym which will replace Complainant's name when the decision is published to non-parties and the Commission's website.

Dion Quinn
10121  vergreen    ay
25 539
verett   A. 9  204
Tel. 314-  53-0  5
D  360  hotmail.com
05 06 2023

2                                          2022004621

1. Complainant's first-line supervisor (S1) created a hostile work environment when, among other things, S1 changed Complainant's work schedule and work assignments, questioned his use of sick leave and breaks, did not provide him assistance, issued him a lower rating on his second performance appraisal, and failed to address the Acting Supervisor's (AS) behavior which included stating, "I am nauseated due to all of the questions" Complainant was asking;

2. Complainant's second-line supervisor (S2) created a hostile work environment when, among other things, S2 informed Complainant that he had to fill out a timesheet to request official time to speak to a union representative, allowed AS to demean Complainant, informed Complainant that AS was his supervisor, accused Complainant of being disrespectful when Complainant identified that it was not in line with Agency policy for AS to supervise him, and issued Complainant a letter of reprimand;

3. Complainant's third-line supervisor (S3) created a hostile work environment when, among other things, S3 allowed AS to demean Complainant, informed Complainant that AS was his supervisor, and accused Complainant of being disrespectful when Complainant identified that it was not in line with Agency policy for AS to supervise him. In addition, S3 walked past Complainant and did not acknowledge him after Complainant spoke to S3; and

4. Complainant's fourth-line supervisor (S4) created a hostile work environment when, among other things, S4 questioned Complainant's use of federal funded transportation and issued him a Notice of Proposed Suspension.

Following an investigation, Complainant requested a hearing before an EEOC Administrative Judge (AJ). The AJ assigned to the matter issued a summary judgment decision in favor of the Agency finding that Complainant was not subjected to discrimination, reprisal, or a hostile work environment as alleged. The Agency subsequently issued a final order fully adopting the AJ's decision. In the appellate decision, the Commission affirmed the final order.

In his request for reconsideration, Complainant expresses his disagreement with the previous decision and largely reiterates arguments previously made on appeal. Among his arguments, Complainant contends that the appellate decision erred in its interpretation of material facts and applicable law. Complainant argues that allowing the appellate decision to stand would result in federal employees' constitutional rights being violated.

We have reviewed the various arguments raised by Complainant in the instant request for reconsideration. However, we can find no basis to disturb the Commission's prior decision. Complainant presents arguments which were previously raised and considered or could have been raised during the original appeal. The Commission emphasizes that a request for reconsideration is not a second appeal. Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), Chap. 9 § VI.A (Aug. 5, 2015); see, e.g., Lopez v. Dep't of Agric., EEOC Request No. 0520070736 (Aug. 20, 2007).

Dion Quinn
10121 vergreen ay 25 539
verett A. 9 204
Tel. 314- 53-0 5
D 360 hotmail.com
05 06 2023

3           2022004621

Rather, a reconsideration request is an opportunity to demonstrate that the appellate decision involved a clearly erroneous interpretation of material fact or law, or will have a substantial impact on the policies, practices, or operations of the Agency. Complainant has not done so here. Thus, we conclude that Complainant has not presented any persuasive evidence to support reconsideration of the Commission's decision.

After reviewing the previous decision and the entire record, the Commission finds that the request fails to meet the criteria of 29 C.F.R. § 1614.405(c), and it is the decision of the Commission to DENY the request. The decision in EEOC Appeal No. 2021001987 remains the Commission's decision. There is no further right of administrative appeal on the decision of the Commission on this request.

<u>COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION</u> (P0610)

This decision of the Commission is final, and there is no further right of administrative appeal from the Commission's decision. You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work.

<u>RIGHT TO REQUEST COUNSEL</u> (Z0815)

If you want to file a civil action but cannot pay the fees, costs, or security to do so, you may request permission from the court to proceed with the civil action without paying these fees or costs. Similarly, if you cannot afford an attorney to represent you in the civil action, you may request the court to appoint an attorney for you. **You must submit the requests for waiver of court costs or appointment of an attorney directly to the court, not the Commission.** The court has the sole discretion to grant or deny these types of requests. Such requests do not alter the time limits for filing a civil action (please read the paragraph titled Complainant's Right to File a Civil Action for the specific time limits).

FOR THE COMMISSION:

Carlton M. Hadden, Director
Office of Federal Operations

<u>February 7, 2023</u>
Date